The STATE of Ohio, Appellee,

v.

RICE, Appellant.

[Cite as *State v. Rice* (1998), 129 Ohio App.3d 91.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95–CA–234.

Decided July 14, 1998.

*Dionne Almasy,* Mahoning County Assistant Prosecuting Attorney, for appellee.

*Gregg A. Rossi,* for appellant.

WAITE, Judge.

This appeal arises out of a trial court decision overruling appellant Thomas A. Rice's motion to suppress results of a blood test used to charge him with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1). For the following reasons, this court reverses the lower court's judgment.

The record reflects that on August 26, 1995, appellant was involved in a two-car automobile accident. Officer Rogers of the Youngstown Police Department was called to the scene to prepare an accident report. At the scene, Officer Rogers observed appellant in the driver's seat of a van in which four other people were passengers. Officer Rogers did not observe appellant operating the vehicle. Officer Rogers testified that appellant gave her his driver's license and insurance information upon request and related to her that he was in pain. Officer Rogers also observed unopened bottles of beer in the van and the smell of alcohol coming from within, although she could not pinpoint from whom it was emanating. Due to his complaints of pain, Officer Rogers told the paramedics on the scene to transport appellant to St. Elizabeth Hospital and said that she would meet them

there. She also testified that she did not perform field sobriety tests on appellant at the scene due to his pain and possible injuries. Appellant was not issued a traffic citation at the scene, as it appeared the driver of the other vehicle was at fault.

At the hospital at least thirty minutes later, Officer Rogers found appellant and began questioning him about the accident. Appellant was able to tell Officer Rogers the circumstances surrounding the accident. She testified that he was cooperative and able to respond to all of her questions. Upon questioning appellant, Officer Rogers smelled an odor of alcohol about him. Officer Rogers asked appellant whether he had been drinking, and appellant answered that he had had "a couple of beers."

Officer Rogers then told appellant that she smelled alcohol on his person and that blood would be drawn from him. Officer Rogers testified that she did not conduct field sobriety tests at the hospital due to appellant's pain and because his injuries made it difficult for him to move about. Officer Rogers read appellant the contents of Ohio Bureau of Motor Vehicles Form 2255 regarding blood-alcohol testing and the applicable statutes and consequences. The report was filled out by Officer Rogers, and she asked appellant whether he understood the information that she had read from the form. She told him to sign the form if he understood everything she had read. While he never apparently indicated his comprehension, he did sign the form, as reflected in the record.

Officer Rogers admitted that she never arrested appellant, nor did she tell him he was under arrest at the scene of the accident or at the hospital prior to the blood draw. However, Ohio Bureau of Motor Vehicles Form 2255 includes the provision that an officer must read to the alleged offender a passage that specifically states that the offender is under arrest. It is unclear from the record at what point appellant was in fact arrested, but he was issued a citation for driving under the influence of alcohol on August 26, 1995, the date of the accident. It is clear that the officer did not consider appellant to be under arrest prior to the drawing of his blood.

On September 21, 1995, appellant filed a motion to suppress the results of the blood test. He argued in his motion that his blood was obtained through an unconstitutional intrusion upon his Fourth Amendment right to be free from unreasonable searches and seizures. The trial court overruled the motion on October 24, 1995, after a hearing on the matter. Immediately after the motion to suppress was denied, appellant withdrew his previous not guilty plea and entered a plea of no contest, reserving his right to appeal. The parties stipulated to a finding of guilt based upon the no contest plea.

The trial court sentenced appellant to thirty days in the county minimum security jail with twenty-seven days suspended. In lieu of his jail term, three days could be spent in a drug education and alcohol prevention program. The court also fined appellant $200 and costs and suspended his driver's license for six months. Appellant was also placed on probation, and an alcohol assessment was ordered.

On November 9, 1995, appellant filed this appeal, raising the following assignments of error:

"I. The trial court erred in overruling defendant's motion to suppress the blood test results since the officer never arrested defendant prior to ordering blood drawn pursuant to R.C. 4511.191 and, therefore, the blood test result must be suppressed, since it was obtained in violation of defendant's constitutional and statutory rights.

"II. Assuming *arguendo* that the officer had arrested the defendant prior to ordering blood drawn, the trial court erred in overruling defendant's motion to suppress the blood test results since the officer lacked probable cause to arrest defendant, and any evidence seized was, therefore, illegally obtained."

Before discussing the merits of this case, it should be noted that the prosecution has failed to file a brief in this matter. Pursuant to App. R. 18(C), this court may accept as true appellant's statement of the facts and issues presented in his brief and reverse the judgment if the record before us reasonably appears to sustain such action.

In his first assignment of error, appellant argues that he was never placed under arrest prior to his blood test as required under R.C. 4511.191, and thus the results of the test were inadmissible and should have been suppressed. Appellant's first assignment of error has merit.

A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. *Maumee v. Johnson* (1993), 90 Ohio App.3d 169, 171, 628 N.E.2d 115, 116. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, but independently determines, " 'without deference to the trial court, whether the court has applied the appropriate legal standard.' " *State v. Glasscock* (1996), 111 Ohio App.3d 371, 374, 676 N.E.2d 179, 182, quoting *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036. It appears that the trial court misapplied the legal standard in this case.

R.C. 4511.191 provides:

"(A) Any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking * * * shall be deemed to have given consent to a chemical test or tests of the person's blood * * * for the purpose of determining the alcohol * * * content of the person's blood * * * *if arrested* for operating a vehicle while under the influence of alcohol * * * or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine." (Emphasis added.)

In *State v. Risner* (1977), 55 Ohio App.2d 77, 9 O.O.3d 230, 379 N.E.2d 262, the arresting officer approached an accident scene and observed paramedics attending to defendant. The officer did not observe defendant driving the car and never spoke to him but smelled an odor of alcohol on defendant when he was speaking to the paramedics. The officer arrested the defendant at the hospital and read him the implied-consent form, including the consequences of his refusal to have blood drawn. Defendant complied and blood was taken, showing a blood-alcohol content above the legal limit for driving under the influence. Defendant filed a motion to suppress the test results, which was denied by the trial court. *Id.* at 78, 9 O.O.3d at 231–232, 379 N.E.2d at 263–264. The issue was appealed.

The *Risner* court reversed the trial court's judgment, holding that where "the actual consent was given after reading the implied consent form to the defendant advising him of the consequences of his refusal to a chemical test * * * such consent cannot be said to be a voluntary consent sufficient to eliminate the requirement of arrest as a condition precedent to the giving of the chemical test and the raising of the presumption dependent on the result of that test." *Id.* at 80, 9 O.O.3d at 232–233, 379 N.E.2d at 265.

The court found that an arrest must be made in accordance with law because "the arrest gives rise to the implied consent, which gives rise to the test, which gives rise to the presumption [of intoxication]." *Id.* The presumption cannot exist or have any probative value independent to a valid arrest. *Id.* Although the presumption of intoxication no longer exists, *Risner* is still good law. See *Fairfield v. Regner* (1985), 23 Ohio App.3d 79, 82–83, 23 OBR 144, 146–148, 491 N.E.2d 333, 336–337.

The facts of *Risner* are similar to those in the case at hand. The "arresting" officer did not observe appellant driving. The officer testified that she smelled alcohol coming from appellant's van in general, but was not sure whether it was coming from appellant or one of his four passengers. She also stated that she did not place appellant under arrest at the scene and did not arrest him before she began reading him the implied-consent form. A citation was subsequently issued for a violation of R.C. 4511.19(A)(1). Without a valid arrest preceding the consent, appellant's apparent consent is invalid.

■ This court agrees that whether consent is voluntary is a question to be determined from the totality of the circumstances as held in *Regner*, 23 Ohio App.3d at 84, 23 OBR at 148–149, 491 N.E.2d at 337–338, quoting *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058–2059, 36 L.Ed.2d 854, 875–876. The *Regner* court held that when a suspect voluntarily consents to submit to a blood test to determine the alcohol content in his blood, this constitutes actual consent and obviates the need for the state to establish the prerequisites of R.C. 4511.191, *i.e.,* probable cause, and advice of the consequences of refusing to submit to the test. *Regner*, 23 Ohio App.3d at 85, 23 OBR at 149, 491 N.E.2d at 338–339. Further, the *Regner* court also quoted the United States Supreme Court's holding in *Bustamonte:*

" '[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority [as advising a suspect of the consequences of failure to submit to a chemical test in Risner]—then we have found the consent invalid and the search unreasonable.' " *Regner*, 23 Ohio App.3d at 84–85, 23 OBR at 149, 491 N.E.2d at 337–339, quoting *Bustamonte*, 412 U.S. at 233, 93 S.Ct. at 2051, 36 L.Ed.2d at 866.

The *Regner* court found that under the circumstances presented, Regner voluntarily consented to a blood draw free from coercion or constraint. *Id.* This court acknowledges that *Regner* appears similar on its face. *Regner* may be distinguished by the fact that the defendant was the only person in the vehicle involved in a single-car accident and defendant was not charged with violation of the state statute, but rather on a local ordinance. Nonetheless, the *Regner* court discussed the state statute and implied-consent form. The court was faced with a situation where the defendant was, by everyone's admission, not under arrest at the time her blood was drawn. The court held that since the defendant had actually consented to the test at the scene, even though she was clearly disoriented at the time and attempted to change her mind during the procedure, it was not an abuse of discretion for the *Regner* trial judge to find actual consent. Therefore, the implied-consent form and the statutory necessity of prior arrest before employing the consent form were not at issue. The *Regner* court emphasized that if they were dealing with the implied-consent procedure, a prior valid arrest of the defendant would be required. 23 Ohio App.3d at 83, 23 OBR at 147–148, 491 N.E.2d at 337.

■ In the matter before us, the totality of the circumstances leads us to believe that the consent obtained was not voluntarily given. Appellant was involved in a two-car automobile accident where damage sustained to his van was disabling and heavy. Another vehicle illegally drove through a red light and

struck appellant's van on the driver's side. Appellant was not issued a traffic citation. Appellant was moaning in pain and the officer determined that she could not perform field sobriety tests on appellant at the scene or at the hospital due to appellant's apparent pain and injuries, which made it difficult for him to move. Officer Rogers testified that every time appellant moved his head or body in either direction he would moan with pain. We cannot see how the court could determine that consent was voluntarily given when all of the evidence in the record indicates that appellant was writhing in pain so great that the officer was unable to conduct field sobriety tests at the scene or at the hospital due to those injuries.

It is clear from the transcript before us that appellant's "consent" was obtained while he was in pain, lying on a gurney in the emergency room of the hospital. The record also reflects that appellant "consented" to having his blood drawn only after Officer Rogers told him that she was going to order the procedure and only after Officer Rogers read appellant the implied-consent form, which includes information as to the consequences of appellant's failure to consent to the draw. Under such circumstances, this court cannot find that consent was voluntarily given.

■ Thus, we must turn to the issue of arrest. An arrest occurs when four elements are present: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, 18 O.O.3d 193, 195, 412 N.E.2d 1328, 1330–1331, citing *State v. Terry* (1966), 5 Ohio App.2d 122, 128, 34 O.O.2d 237, 240–241, 214 N.E.2d 114, 119.

■ In the instant case, Officer Rogers admitted that she did not arrest appellant at the scene and did not arrest him at the hospital prior to reading him the implied-consent form. Some jurisdictions have held that an oral reading of the implied-consent form to the suspect is sufficient to imply an arrest, as the form itself states that the suspect is under arrest. *State v. Barr* (Apr. 26, 1995), Summit App. No. 16822, unreported, 1995 WL 244156. In reading the form, the *Barr* court held that officers are manifesting their intent to arrest the suspect and are seizing the suspect. *Id.* That court also held that although completion of the implied-consent form does not always establish that a suspect has been arrested, it is evidence of an arrest. *Id.* Most important, the *Barr* court held that "[i]n the absence of contradictory evidence in this case, the trial court erred in determining that defendant was not under arrest at that point." *Id.*

Other courts have held that a simple reading of the implied-consent form without a valid prior arrest cannot constitute an arrest in and of itself due to the coercive nature of the information on the form. *State v. Riley* (Dec. 14, 1994), Lorain App. No. 94–CA–5668, unreported, 1994 WL 700080, citing *State v. Chard* (Feb. 24, 1984), Lucas App. No. L–83–308, unreported, 1984 WL 7788; *State v. Badenhop* (Feb. 25, 1983), Fulton App. No. F–82–16, unreported, 1983 WL 13850, affirmed in part and reversed in part (1984), 9 Ohio St.3d 152, 9 OBR 442, 459 N.E.2d 867.

The language of R.C. 4511.191 specifically provides that an arrest is necessary, and, throughout the additional sections accompanying this statute, reference is repeatedly made to "the person under arrest" and the "arresting officer." It would be absurd to conclude from Form 2255 that its language is sufficient to "imply" arrest, which is then sufficient to "imply" consent to draw body fluids from this implied arrestee. The mandatory statutory language, coupled with the legislative intent behind the statute and the *Risner* and *Bustamonte* cases, leads this court to hold that a valid arrest must precede the seizure of a bodily substance, including a blood draw, and must precede an implied consent given based upon Form 2255.

Inasmuch as we find that appellant's first assignment of error has merit and we must reverse his conviction based upon the failure to suppress the results of the blood test taken when appellant was never validly under arrest, we do not need to address the merits of appellant's second assignment of error. Accordingly, the trial court's judgment is hereby reversed, and appellant is discharged.

*Judgment reversed.*

Cox and Vukovich, JJ., concur.