OPINION
{¶ 1} Defendant-appellant, Claude Rondell Jacobs, appeals from the judgment of the Mahoning County Court of Common Pleas convicting him of rape following a jury trial.
 {¶ 2} On July 23, 1996, 12-year-old Jamie Crow (Jamie) accompanied her friends, 14-year-old Tomasina McKenney (Tomasina), 13-year-old Alena McKenney (Alena), and their younger sister Tamara McKenney (Tamara) to the Country Squire Motel in Smith Township. Tomasina's friend Darnell picked the girls up and drove them to the motel. A man called SoJo accompanied Darnell. When they arrived at the motel, the group went into room number two. Another man who was introduced to the girls as Hakeem was in the room. Eventually Alena and Tamara left with SoJo to buy drinks and marijuana. Shortly after they left, Tomasina and Darnell left to go to room number ten, leaving Jamie alone with Hakeem.
 {¶ 3} Jamie and Hakeem talked a little. Hakeem asked Jamie how old she was and she told him she was 12. He told her that she looked older but she reiterated that she was 12 years old. Hakeem told her he was 20 years old. While Jamie and Hakeem were alone in the room, Hakeem took off his pants. The two engaged in sexual intercourse. Jamie testified that she was scared, but that she did not consider the sex as rape. When Alena, Tamara, and SoJo returned, Alena walked in the room and saw Jamie pulling up her pants. Hakeem was the only other person in the room.
 {¶ 4} Upon arriving home that night, Jamie's mother took her to the police station for running away. Jamie and the other girls told the police what had gone on that night. Jamie said a man named Hakeem had sex with her and described him as being a little chunky, dark, about a foot taller than she is, and with a cornrow hairstyle. Several days later, the police compiled a photo array of six subjects. Sergeant Christopher Burr (Sgt. Burr) showed the photo array to each of the girls individually. Jamie and Tomasina were unable to identify the perpetrator in the photo array. However, Alena identified appellant as the man who had sex with Jamie. Sgt. Burr also showed the photo array to the motel manager and to a gas station clerk in the area. Both identified appellant as having been at their places of business.
 {¶ 5} A Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(1)(b), the statutory rape section. Appellant filed a motion to suppress both out-of-court and in-court identification testimony. The court held a hearing on the motion and overruled appellant's motion in its January 11, 1999 judgment entry. The case proceeded to a jury trial and on April 1, 1999, the jury found appellant guilty of rape. The trial court entered its judgment entry of sentence on April 5, 1999, sentencing appellant to five years of incarceration. Appellant filed his timely notice of appeal on April 30, 1999.
 {¶ 6} Appellant raises two assignments of error, the first of which states:
 {¶ 7} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS THE IDENTIFICATION TESTIMONY OF EYE WITNESSES AS EACH IDENTIFICATION WAS IMPERMISSIBLY TAINTED BY AN UNFAIR AND OVERLY SUGGESTIVE PHOTOGRAPHIC IDENTIFICATION PROCEDURE PRIOR TO TRIAL RENDERING ANY PRE-TRIAL OR TRIAL IDENTIFICATION UNRELIABLE."
 {¶ 8} Appellant argues that the trial court should not have permitted Alena's identification of him at trial because the pretrial photo array was unfair and overly suggestive. He also contends that the trial court should not have allowed Sgt. Burr to testify that the motel manager and the gas station clerk identified appellant as being at their places of business.
 {¶ 9} Appellant makes two arguments. First, he asserts that the photo array was impermissibly suggestive. The photo array contains pictures of six African-American men, all appearing to be about the same age. Appellant complains that of the six photos only one or two of the men pictured have a cornrow hairstyle. He alleges that since the witnesses described the perpetrator as having a cornrow hairstyle, the photo array was prejudicial. Furthermore, appellant argues that the only girl who was able to identify him in the photo array was the one who spent the least amount of time with the perpetrator. Jamie and Tomasina were not able to pick appellant out from the photo array. Alena was able to identify appellant. Appellant argues this demonstrates that the photo array was overly suggestive because the two individuals who had the greatest opportunity to observe the perpetrator were able to eliminate his picture as the perpetrator. Thus, appellant argues that the trial court should have suppressed all of the testimony pertaining to the photo array and out-of-court identifications.
 {¶ 10} Second, appellant argues that the trial court should have excluded Alena's in-court identification of him. He points out that Alena testified that she got a "so-so" look at the perpetrator. (Tr. 171). He again points our attention to the fact that neither Jamie nor Tomasina, the two who spent the most time with the perpetrator, were able to pick him out of the photo array. Next, appellant notes that when Alena first talked with police she did not describe the perpetrator in detail and she never mentioned a tattoo. However, during her testimony, Alena detailed a tattoo on the perpetrator's forearm.
 {¶ 11} Appellant focuses on the fact that neither Jamie nor Tomasina was able to identify him in the photo array. However, our focus must be on the photo array itself and on Alena's identification of appellant.
 {¶ 12} When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness' credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard.State v. Rice (1998), 129 Ohio App.3d 91, 94. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.
 {¶ 13} The United States Supreme Court set out the test for determining whether eyewitness identification at trial following a pretrial identification should be set aside in United States v. Wade
(1967), 388 U.S. 218. The court, quoting its decision in Wong Sun v.United States (1963), 371 U.S. 471, 488, stated:
 {¶ 14} "`[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wade,388 U.S. at 241.
 {¶ 15} The court also listed factors to consider when applying this test to pretrial lineup identification. The factors include: the prior opportunity of the witness to observe the alleged criminal act; the existence of any discrepancy between any pre-lineup description and the defendant's actual description; any identification prior to the lineup of another person; identification by photograph of the defendant prior to the lineup; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the lineup identification. Id. at 241.
 {¶ 16} The Ohio Supreme Court addressed this issue in State v.Lathan (1972), 30 Ohio St.2d 92. The court held that Wade does not require the automatic exclusion of an in-court identification as long as the state can show by clear and convincing evidence that the in-court identification is based on an observation independent of the pretrial identification or that the error was harmless. Id. at 96. The court has also held that although an identification procedure is suggestive, as long as the in-court identification is reliable, it is admissible. Statev. Barker (1978), 53 Ohio St.2d 135, 142.
 {¶ 17} First, we must look at whether the identification procedure itself was unduly suggestive. In a similar case where the witness described the defendant as being "`like bald in the front and short hair,'" the defendant argued that the photo array was unduly prejudicial because only one or two other subjects in the photo array were bald.State v. Browner, 4th Dist. No. 99CA2688, 2001-Ohio-2518. The court held that the police were not required to insert only bald men into the photo array. Id. The court reasoned that hairstyles can change and a person may be bald one week and have at least some hair the next week. Id.
 {¶ 18} Additionally, "[a] defendant in a lineup need not be surrounded by people nearly identical in appearance." State v. Davis
(1996), 76 Ohio St.3d 107, 112. The five other men in the photo array with appellant all share the same characteristics as appellant. They all appear relatively similar to appellant in appearance as far as age, features, skin tone, facial hair, dress, and photo background. Thus, the photo array was not impermissibly suggestive.
 {¶ 19} Since the photo array was not unnecessarily suggestive, Alena's in-court identification was not tainted. However, we will go on to discuss the reliability prong of the test. We must look at whether the in-court identification was reliable. Examining this case in light of the applicable factors, the trial court did not err in denying appellant's motion to suppress and allowing Alena's in-court identification of appellant.
 {¶ 20} First, although Alena did not observe the rape occurring, she entered the room as Jamie was pulling up her pants. (Tr. 158). Furthermore, Alena testified that she had an opportunity to observe appellant for five to ten minutes before she left with Tamara and SoJo. (Tr. 157). However, at the suppression hearing Sgt. Burr testified that his report indicated Alena had been in Hakeem's company for about an hour to an hour and a half. (Suppression Tr. 18-19). Second, the evidence indicates that Alena gave a statement to the police; however, it is not clear as to any pre-lineup description that Alena may have provided. Third, Alena never identified anyone else as being the man she saw with Jamie. Fourth, since this was the only photo lineup, there was no prior opportunity for Alena to identify appellant. Fifth, Alena never failed to identify appellant. Sgt. Burr showed her the photo array for the first time on August 3, 1996, and she identified appellant within one minute. (Suppression Tr. 9, 19). Sixth, the lapse of time between when Alena saw appellant with Jamie (July 23, 1996) and when Sgt. Burr showed her the photo array (August 3, 1996) was only 11 days. Thus, Alena's identification of appellant was reliable.
 {¶ 21} Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED AS A MATTER OF LAW."
 {¶ 24} Appellant claims that the jury's verdict was against the manifest weight of the evidence. He asserts that this Court should disregard several pieces of evidence. He argues that we should not accept Alena's identification of him in the photo array as accurate. He also argues that we should not believe her description of his tattoo because it was not in her statement to the police. Appellant argues that we should likewise disregard the evidence regarding the fingerprints on the soda pop can because there is no way to tell if the can came from room two.
 {¶ 25} Next, appellant argues that since neither the victim nor Tomasina could identify him in the photo array, he was not the perpetrator. He also contends that he impeached Alena's testimony because she testified that she did not make misleading statements to Jamie or her mother about where the girls were going on July 23, 1996 but Jamie testified that she did. Finally, appellant claims that the description of the perpetrator was vague and there was no evidence presented that he went by the name Hakeem on July 23, 1996.
 {¶ 26} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 27} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} The jury convicted appellant of rape in violation of R.C.2907.02(A)(1)(b), which provides:
 {¶ 29} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 30} "* * *
 {¶ 31} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 32} A review of the transcript reveals the following evidence.
 {¶ 33} Jamie testified that on July 23, 1996, she was 12 years old. (Tr. 42). She testified that on that date she, Tomasina, Alena, and Tamara went with Darnell and SoJo to the Country Squire Motel in Smith Township. (Tr. 35). Upon arriving, the group entered room number two. (Tr. 38). When the girls went into room two, Darnell introduced them to a man named Hakeem. (Tr. 38-39). Jamie described Hakeem as being somewhat chunky, a little bit taller than she is a little bit dark, with cornrows. (Tr. 39). Jamie stated that the whole group stayed in the room talking for about an hour and then Alena and Tamara left with SoJo. (Tr. 40). Next, Tomasina and Darnell left to go to room ten. (Tr. 41). Jamie and Hakeem were left alone. (Tr. 42).
 {¶ 34} Jamie testified that she was a little bit afraid to be alone with Hakeem. (Tr. 43). She stated that they talked a little and he asked her how old she was. (Tr. 43). She told him she was 12 and he told her that she looked older. (Tr. 43). Jamie again told Hakeem she was 12 years old. (Tr. 44). Hakeem told her he was 20. (Tr. 44). Jamie stated that while she was laying on the bed watching television, Hakeem took off his pants and underwear. (Tr. 48-49). Jamie testified that she became scared and uncomfortable. (Tr. 49). She testified that she removed her pants and underwear because she was young and "didn't know what else to do." (Tr. 49-50). Jamie testified that the two engaged in sexual intercourse. (Tr. 50). After they finished, Alena and Tamara returned. (Tr. 52).
 {¶ 35} After she returned home, Jamie's mother took her to the police station. Jamie testified that at first she did not tell anyone about what happened with Hakeem because she did not consider what happened rape. (Tr. 55). Jamie testified that she later went to the police station to view a photo array. (Tr. 59). She stated that she was not able to identify anyone. (Tr. 59).
 {¶ 36} Tomasina testified that on the night in question she made plans with Darnell to go to a motel and bring some of her friends. (Tr. 121-23). Tomasina corroborated Jamie's account of how they got to the motel and the events leading up to the point when she and Darnell left room two to go to room ten. She stated that Hakeem was a friend of Darnell's and this was the first time she had met Hakeem. (Tr. 128). Tomasina testified that she asked Hakeem about the tattoos on his arm. (Tr. 129). She testified that when she and Darnell returned to room two, after having been in room ten, Jamie told her that she had sex with Hakeem. (Tr. 131). Finally, Tomasina stated that several days later when the police showed her the photo array she did not recognize anyone. (Tr. 134).
 {¶ 37} Alena testified next. Alena was the only one to testify that Hakeem was in the car when Darnell and SoJo picked the girls up. (Tr. 155). Alena testified that this was the first and only time she met Hakeem. (Tr. 155). She testified that she got a "so-so look" at Hakeem but she had a chance to observe him that night. (Tr. 156). Alena testified that she observed a tattoo on Hakeem's right inner arm. (Tr. 164). She stated that the tattoo looked like a "W" and it had a picture with his name going through it. (Tr. 164-66). She then drew a picture of the tattoo for the jury on the blackboard. (Tr. 165-66). Appellee showed Alena a photograph of a tattoo, which she recognized as the one on Hakeem's arm. (Tr. 179). On cross-examination, Alena stated that she did not write anything in her statement to the police about appellant's tattoo. (Tr. 172).
 {¶ 38} Alena testified that when she returned to room two after leaving with Tamara and SoJo, she saw Jamie and Hakeem alone in the room and Jamie was pulling her pants up. (Tr. 158-59, 166). Alena stated that the police showed her some photos and asked her if she could identify anyone. (Tr. 161). She stated that she recognized Hakeem in the photo array. (Tr. 161). Alena looked at the photo array again in court and stated that Hakeem was pictured in photo number three. (Tr. 162). Sgt. Burr testified that photo number three was appellant's photo. (Tr. 250).
 {¶ 39} Alena also stated that during the evening she heard Darnell call Hakeem "Claude." (Tr. 159). Alena identified appellant in court as the man she knew as Hakeem. (Tr. 166-67). However, she also stated that she told the police she thought she heard Darnell call Hakeem "Clyde" and they told her to write "Claude." (Tr. 173).
 {¶ 40} Detective John Leech testified regarding appellant's many aliases. He stated he searched for other names Hakeem used and he came across numerous aliases including Terrance Austin, Terrance Auston, Terrace Hakeem, Hakeem Terrance, Claude Jacobs, Claude Randall Jacobs, Claude Rondell Jacobs, and New York Jacobs. (Tr. 186-87).
 {¶ 41} Doctor Phillip J. Cover, the physician who examined Jamie the day after the rape, testified next. He testified that in his opinion there was evidence of forcible sexual intercourse on Jamie that had occurred in the past 24 hours. (Tr. 221-22).
 {¶ 42} Next, Sgt. Burr testified. He testified that he was called to the Crow residence to investigate a rape. (Tr. 229). He stated that at the time Jamie was 12 years old. (Tr. 230). He testified that Jamie informed him that she had sex with a man named Hakeem. (Tr. 234). He stated that he went to the Country Squire Motel and went to room two to investigate. (Tr. 239). He stated that the room had already been cleaned so he asked the manager to show him the items that were cleaned out of the room. (Tr. 239). The manager showed him some trash bags and he retrieved some items from the bags including several soda pop cans. (Tr. 240). On cross-examination, Sgt. Burr testified that the trash bags were not marked as belonging only to room two. (Tr. 262).
 {¶ 43} Sgt. Burr also testified that while Jamie and Tomasina were unable to identify anyone in a photo lineup, Alena identified appellant as the man known as Hakeem. (Tr. 248-50). He testified that he also showed the photo array to Melinda Vizzuso, the manager of a gas station near the motel, and Stanley Spencer, the motel manager, who both identified appellant as being at their establishments. (Tr. 251).
 {¶ 44} Finally, Sgt. Burr testified that he observed appellant's tattoo stating that it had the name Hakeem on it. (Tr. 253). He also identified the tattoo on appellant's arm in a photograph. (Tr. 254).
 {¶ 45} Cindy Mayle, a latent fingerprint expert at the Ohio Bureau of Criminal Identification and Investigation, testified next. Ms. Mayle stated that a latent thumbprint from one of the soda pop cans matched appellant's thumbprint. (Tr. 320).
 {¶ 46} Finally, Paul Andrews, an investigator for the Mahoning County Prosecutor's Officer, testified. He stated that he went to the Mahoning County Justice Center in October of 1998 to take photographs of appellant's tattoos. (Tr. 343). He testified that he supervised as one of the deputies took the photos of appellant's arm. (Tr. 344). Andrews identified appellant as the man to whom the tattoos in the photos belonged. (Tr. 344-45).
 {¶ 47} Based on the above evidence it is clear that a substantial amount of credible evidence supports the jury's verdict. Although there were minor inconsistencies between Alena's account of the events and the other girls' accounts, issues of witness credibility are best left to the trier of facts. Additionally, since the photo array was not unnecessarily suggestive, the jury was free to believe Alena's identification of appellant. Furthermore, whether the soda pop can came from room two or a different room at the motel, appellant's thumb print on the can places him at the motel on the night in question. Appellee presented evidence on all of the essential elements of the crime of rape under the statutory rape section. Thus, we cannot say that the jury clearly lost its way in reaching its verdict. Accordingly, appellant's second assignment of error is without merit.
 {¶ 48} For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.