[Cite as *State v. Cunningham*, 2011-Ohio-1172.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-CO-19 |
| | ) | |
| ANTHONY CUNNINGHAM, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
                               Pleas of Columbiana County, Ohio
                               Case No. 2009CR254

JUDGMENT:                      Affirmed

APPEARANCES:
For Plaintiff-Appellant        Robert Herron
                               Prosecutor
                               Ryan P. Weikart
                               Assistant Prosecutor
                               105 South Market Street
                               Lisbon, Ohio 44432

For Defendant-Appellee         Attorney Douglas A. King
                               91 West Taggart St., P.O. Box 85
                               East Palestine, Ohio 44413

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: March 8, 2011

DONOFRIO, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from a Columbiana County Common Pleas Court judgment granting defendant-appellee, Anthony Cunningham's, motion to suppress drug evidence.

{¶2} On October 4, 2009, Sgt. John Scheets, along with two other officers, were dispatched to an apartment building in Salem where it had been reported that a man was using a gun to hold a woman against her will. Once Sgt. Scheets arrived at the apartment building, James McFarland informed him that a man was holding his ex-wife against her will. Sgt. Scheets then saw McFarland's ex-wife, who was visibly upset, running down the steps. Next, he saw appellee running down the steps after her. Sgt. Scheets ordered appellee to the ground and handcuffed him for officer safety. Sgt. Scheets then either asked appellee if he would come to the police station or told him that he had to come to the station to make a statement.

{¶3} Before un-cuffing appellee, Sgt. Scheets performed a pat-down search for weapons. According to Sgt. Scheets, he felt a hard object in appellee's front pants pocket. He did not know what the object was. Along with this hard object, he also felt a baggie. Sgt. Scheets claimed that he asked appellee what was in his pocket and appellee told him to take it out. Appellee, however, claimed that he never gave Sgt. Scheets permission to remove anything from his pocket. Either way, Sgt. Scheets reached into appellee's pocket and removed what he claimed to be a set of false teeth along with a baggie containing heroin. Appellee, however, claimed he did not have a set of false teeth in his pocket, but instead a tube of Fixodent, and that it was located in a different pocket than the baggie.

{¶4} A Columbiana County grand jury subsequently indicted appellee on one count of aggravated burglary, a first-degree felony in violation of R.C. 2911.11(A)(1), and one count of drug possession, a fifth-degree felony in violation of R.C. 2925.11(A). These counts stemmed from different incidents. This appeal deals only with the drug possession count.

{¶5} Appellee filed a motion to suppress the heroin found in his pocket during the pat-down search. The trial court granted the suppression motion finding

that a search warrant was required to access the baggie of heroin found in appellee's pocket.

**{¶6}** The state filed a timely notice of appeal on June 15, 2010.

**{¶7}** The state now raises a single assignment of error, which states:

**{¶8}** "THE TRIAL COURT ERRED IN SUPPRESSING THE HEROIN DISCOVERED BY SGT. SCHEETS AND DEEMING HIS TERRY PAT-DOWN OF THE DEFENDANT AS A VIOLATION OF ESTABLISHED LAW."

**{¶9}** The state argues that the trial court erred in suppressing the heroin. It asserts that we must consider the circumstances of the pat-down. Specifically, it contends that had Sgt. Scheets not felt a hard, sharp object that he believed could be a knife, then he would not have removed the plastic baggie with the heroin because it was balled up with the hard object. The state argues that Sgt. Scheets acted reasonably and articulated specific facts to justify the pat-down. It points out that Sgt. Scheets was responding to a report of a man holding a woman at gunpoint in the apartment complex. Upon arriving at the apartment complex, Sgt. Scheets saw a woman running out of the building and appellee coming down the stairs in pursuit. The state alleges it was reasonable for Sgt. Scheets to believe that appellee could be armed. Therefore, the state argues, it was reasonable for Sgt. Scheets to pat appellee down before un-cuffing him.

**{¶10}** Furthermore, the state asserts, when Sgt. Scheets felt a hard, sharp object in appellee's pocket it was reasonable to suspect that it might be a knife. The state contends too that appellee gave Sgt. Scheets consent to remove the item from his pocket. But it goes on to argue that appellee's consent was unnecessary given that Sgt. Scheets believed the object he felt could be a knife.

**{¶11}** Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court

assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham* (1994), 96 Ohio App .3d 649, 653. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. *State v. Rice* (1998), 129 Ohio App.3d 91, 94. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id.

**{¶12}** Here the trial court found that after officers handcuffed appellee, Sgt. Scheets felt a plastic bag in appellee's pocket and claimed that appellee gave him permission to remove it. The court noted that appellee denied giving Sgt. Scheets permission. The court noted in Sgt. Scheets' testimony that it was not his intention to arrest appellee at the time of the pat-down. The court found that even if appellee did tell the officers to "check out" what was in his pocket, this consent was coerced. The court found that a search warrant was necessary to access the contents of the bag.

**{¶13}** The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1. For a search or seizure to be reasonable under the Fourth Amendment, it generally must be based upon probable cause and executed pursuant to a warrant. *Katz v. United States* (1967), 389 U.S. 347, 357. But, the law does allow for reasonable police searches and seizures in certain circumstances such as an investigatory stop. A police officer may make a brief, warrantless, investigatory stop without probable cause when the officer has a reasonable suspicion that the individual is or has been involved in criminal activity. *Terry*, 392 U.S. 1. Reasonable suspicion means that the investigating officer must be able to point to specific, articulable facts that, when coupled with any rational inferences that may be drawn from those facts, warrant the investigation. Id. Moreover, during such an encounter, an officer is authorized to perform a limited pat-down search for weapons as a safety precaution if there is a reasonable suspicion that the person stopped may be armed and dangerous. Id.

**{¶14}** There is no debate here that a pat-down for weapons was reasonable. Sgt. Scheets was responding to a report that a man was holding a woman at gunpoint inside an apartment complex. When Sgt. Scheets arrived at the apartment complex, he saw a woman running from the apartment and appellee chasing after her. Based on this information, it was reasonable for Sgt. Scheets to stop appellee and handcuff him. It was also reasonable to pat-down appellee before removing the handcuffs, especially in light of the fact that appellee was going to ride with officers to the police station to give a statement. Sgt. Scheets would reasonably want to ensure that appellee did not have a weapon on his person.

**{¶15}** But the reasonableness of whether a pat-down was warranted is not at issue here. Instead, we must focus on the scope of the pat-down search.

**{¶16}** The Ohio Supreme Court has stated:

**{¶17}** "[I]t is important first to emphasize that *Terry* does not require that the officer be absolutely convinced that the object he feels is a weapon before grounds exist to remove the object. At the same time, a hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect. When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's 'size or density,' that it could be a weapon. 3 LaFave, Search and Seizure (2 Ed.1987) 521, Section 9.4(c).

**{¶18}** "'Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its 'size or density' is such that it might be a weapon. But because "weapons are not always of an easily discernible shape," it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon "the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing," which is most likely to occur when the suspect is wearing heavy clothing.' (Footnotes omitted.) Id. at 523." *State v. Evans* (1993), 67 Ohio St.3d 405, 415.

{¶19} Both Sgt. Scheets and appellee testified at the suppression hearing.

{¶20} According to Sgt. Scheets, he and two other officers responded to a report of a man with a gun holding a woman against her will at an apartment complex. (Tr. 5). When he arrived at the apartment complex, Sgt. Scheets spoke to McFarland who told him that someone was holding his ex-wife against her will in apartment four. (Tr. 6). Sgt. Scheets went to the door and then saw Ms. McFarland run down the steps, visibly upset. (Tr. 7). He next saw appellee run down the steps in pursuit of Ms. McFarland. (Tr. 7). Sgt. Scheets ordered appellee to the ground and handcuffed him. (Tr. 7). Sgt. Scheets testified that at that time, appellee was not charged with anything and was only handcuffed for officer safety. (Tr. 8).

{¶21} Sgt. Scheets stated that he asked appellee if he would come to the police station to give a statement and appellee agreed. (Tr. 8). Sgt. Scheets then patted appellee down to ensure that appellee was not armed before he placed appellee in his vehicle. (Tr. 9). He testified that he felt "something hard" in appellee's left, front pants pocket along with a baggie. (Tr. 9). Sgt. Scheets testified:

{¶22} "Q. Could you tell what the object was at that point?

{¶23} "A. No, I couldn't.

{¶24} "Q. Could you tell how many objects there were?

{¶25} "A. Possibly there was two, but I really couldn't tell because it was all balled up.

{¶26} "Q. And what did it feel like to you?

{¶27} "A. The one was a hard object and it was kind of like sharp on the one end. And the other one felt like a plastic Baggie with something hard in it." (Tr. 9).

{¶28} Sgt. Scheets testified that he asked appellee what the objects were and appellee told him to take them out, so he did. (Tr. 9-10). He stated that upon removing the items, he found one was a partial set of false teeth and the other was a baggie with heroin. (Tr. 10).

**{¶29}** On cross examination, Sgt. Scheets testified that when appellee came running out of the apartment, appellee did not have a gun. (Tr. 12). He then testified:

**{¶30}** "Q. And you felt something hard that you later determined was a pair of false teeth?

**{¶31}** "A. Yes.

**{¶32}** "Q. But you didn't know that that wasn't a weapon?

**{¶33}** "A. I couldn't tell at the time.

**{¶34}** "Q. What did you think it was at the time?

**{¶35}** "A. I don't know.

**{¶36}** "Q. You didn't know. And then you also felt - - and then you felt a plastic Baggie. What weapon did you think that plastic Baggie was?

**{¶37}** "A. I didn't think that was a weapon." (Tr. 14).

**{¶38}** Sgt. Scheets further stated that when he patted appellee down, he had no idea what was in the plastic baggie. (Tr. 18). He then testified that he was trying to remove the hard object and the baggie came out with it. (Tr. 20). Sgt. Scheets stated that he had been advised that there was a black man with a gun. (Tr. 21). He admitted that the false teeth did not feel like a gun. (Tr. 21). Finally, Sgt. Scheets testified:

**{¶39}** "Q. What weapon did you actually think those false teeth were?

**{¶40}** "A. It was small. It could have been a knife. It could have been something folded like a knife or something.

**{¶41}** "Q. False teeth could have been a knife?

**{¶42}** "A. I didn't know what it was in the pocket and that's why I removed it.

**{¶43}** "Q. Could have been just about anything?

**{¶44}** "A. (Witness nods head affirmatively.)

**{¶45}** "Q. But you knew it wasn't a gun?

**{¶46}** "A. I knew it wasn't a gun." (Tr. 23-24).

{¶47} Appellee testified that at the time in question, Ms. McFarland ran out of the apartment and dropped the baggie, which he picked up and stuck in his pocket. (Tr. 25). Appellee then saw Sgt. Scheets, who was pointing his gun and ordered him down the steps. (Tr. 26). Appellee stated that an officer threw him to the floor and handcuffed him. (Tr. 26). He testified that Sgt. Scheets then told him he had to come to the police station and proceeded to pat him down. (Tr. 27). Appellee stated that he never gave Sgt. Scheets permission to look in his pockets. (Tr. 27). He further testified that the item in his pocket was a tube of Fixodent, not a set of false teeth, and that it was in a separate pocket from the baggie. (Tr. 30-31).

{¶48} Based on the above testimony, we cannot conclude that the trial court erred in suppressing the heroin.

{¶49} This case comes down to a determination of credibility. Sgt. Scheets stated that the hard item he felt in appellee's pocket was a partial set of false teeth. Appellee stated that it was a tube of Fixodent. Sgt. Scheets testified that he felt two objects together in one pocket. Appellee testified that the baggie was in a separate pocket from the tube of Fixodent. Sgt. Scheets testified that appellee gave him permission to look in his pocket. Appellee testified that he did not. At a suppression hearing, matters of witnesses' credibility are for the trial court to determine. *State v. Lewis*, 7th Dist. No. 03-MA-36, 2005-Ohio-2699, at ¶10, citing *State v. Mills* (1992), 62 Ohio St.3d 357, 366.

{¶50} Furthermore, Sgt. Scheets testified that he knew the item he felt in appellee's pocket was not a gun. Additionally, Sgt. Scheets never stated that he believed the baggie could be a weapon. Moreover, during his direct, cross, and redirect examinations, Sgt. Scheets stated four times that he did not know what the item was that he felt in appellee's pocket. (Tr. 9, 14, 20). It was not until further recross examination that Sgt. Scheets, for the first time stated that the item he felt could have been a knife. (Tr. 23).

{¶51} Given that this case turned on credibility determinations, we must defer to the trial court's decision to suppress the evidence. The trial court held the role as

trier of fact and, as such, it was in the best position to resolve factual questions and evaluate the witnesses' credibility. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8. Accordingly, the state's assignment of error is without merit.

{¶52} For the reasons stated above, the trial court's judgment is affirmed.

Vukovich, .J., concurs.

DeGenaro, J., concurs.