The STATE of Ohio, Appellee,

v.

WATERS, Appellant.

The State of Ohio, Appellee,

v.

Gatewood, Appellant.

The State of Ohio, Appellee,

v.

McClaughlin, Appellant.

[Cite as *State v. Waters*, 181 Ohio App.3d 424, 2009-Ohio-1338.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

Nos. 08–COA–014, 08–COA–015 and 08–COA–016.

Decided March 23, 2009.

David M. Hunger, Ashland Acting Assistant Law Director, for appellee.

Bryon D. Corley, for appellant David Waters.

David R. Stimpert, for appellants Brandon Gatewood and Mark McLaughlin.

HOFFMAN, Judge.

{¶ 1} In case No. 08–COA–014, defendant-appellant David Waters appeals his conviction entered by the Ashland Municipal Court on one count of disorderly conduct and one count of possession of a controlled substance after the trial court found him guilty upon accepting his no-contest plea. In case No. 08–COA–015, defendant-appellant Brandon L. Gatewood appeals his conviction entered by the Ashland Municipal Court on one count of disorderly conduct and one count of possession of drug paraphernalia after the trial court found him guilty upon accepting his no-contest plea. In case No. 08–COA–016, defendant-appellant Mark A. McLaughlin appeals his conviction entered by the Ashland Municipal Court on one count of disorderly conduct and one count of possession of a controlled substance after the trial court found him guilty upon accepting his no-contest plea. Plaintiff-appellee in all three cases is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} On February 7, 2008, complaints were filed against each appellant in the Ashland Municipal Court, charging appellant Waters with disorderly conduct and possession of a controlled substance; appellant Gatewood with disorderly conduct and possession of drug paraphernalia; and appellant McLaughlin with disorderly conduct and possession of a controlled substance. Appellants filed motions to dismiss and motions to suppress. The trial court conducted a hearing on the motions on April 16, 2008.

{¶ 3} Officer Brian Evans of the Ashland Police Department testified that on February 9, 2008, at approximately 1:20 a.m., he was dispatched to the area of 345 Sandusky Street after the department received a report of a revving engine. The officer arrived at the residence and observed a white male positioned by a parked vehicle near an open garage. When the individual noticed the officer, he ran into the garage and threw something. Officer Evans exited his cruiser and approached the garage. Officer Evans saw McLaughlin standing inside the garage. McLaughlin was not the individual the officer had just seen running into the garage. The officer questioned McLaughlin as to whether he had heard a revving engine, to which McLaughlin replied that he had not heard anything. Officer Evans found McLaughlin's speech to be slow and slurred. The officer smelled alcohol on McLaughlin's breath. Although the officer testified that McLaughlin was unsteady on his feet, he added, "[He] [w]asn't falling down by any means but as in swaying back and forwards and taking a half step back and a half step forward as I was talking to him."

{¶ 4} Officer Evans explained that he and McLaughlin were standing at the entrance of the garage, and another individual, later identified as Waters, was sitting down inside the garage. Because Waters's face was pale and because he was also intoxicated, the officer asked him a number of times whether he (Waters) was "ok." Waters began to answer the officer, but vomited before he could do so.

{¶ 5} Gatewood, who was the individual who ran into the garage, was sitting against the back wall. Officer Evans recalled that Gatewood's speech was slow and slurred. Because of the distance between the two men, Officer Evans could not smell any alcohol on Gatewood or see Gatewood's eyes. Following the arrival of other officers at the scene, Officer Evans made further contact with Gatewood. The officer smelled a strong odor of alcohol on Gatewood's breath. Officer Evans noticed a beer can lying on the floor of the garage off to the side, which he believed was the item Gatewood had thrown. Officer Evans recalled that Gatewood was unsteady on his feet and needed assistance as he walked out of the garage. The officer added that Gatewood was also unsteady while he was seated, swaying back and forth.

{¶ 6} Officer Evans stated that a female had been hunched down behind a tire in the garage. Upon his initial contact with the female, the officer determined that she was intoxicated, as she repeatedly lost her balance, had slow slurred speech, and had a strong odor of alcohol coming from her breath. Officer Evans instructed Patrolman Kiley to arrest McLaughlin and pat him down before placing him in the cruiser. Officer Evans explained that he had arrested McLaughlin because of his state of intoxication. He added that all four individuals in the garage were too intoxicated to care for themselves. He thought that leaving the individuals in the situation would not be safe for any of them. The officer noted that he did not call for a rescue squad or have Waters checked because Waters had vomited and seemed coherent enough to be taken to the county jail. He did not believe that Waters's condition constituted a medical emergency requiring a trip to the hospital and added that he would be placed in a holding cell and watched by jail staff.

{¶ 7} Each appellant was searched incident to his arrest. The officers at the scene found drugs on McLaughlin. A marijuana pipe was found on Gatewood. Two marijuana cigarettes were found on Waters. While being transported to the county jail, McLaughlin repeatedly asked Officer Evans why he was being arrested. Officer Evans explained that his actions were considered public intoxication, and due to his intoxication, the officer did not feel he was capable of caring for himself. McLaughlin responded that he had had only two beers, to which the officer replied, "You probably smoked some too." McLaughlin answered that he had smoked marijuana earlier. Officer Evans stated that he did not question McLaughlin, but was merely carrying out a dialogue with him.

{¶ 8} Upon the conclusion of the hearing, the trial court found that Officer Evans had probable cause to arrest appellants for intoxication; therefore, the searches incident to their arrests were proper. The trial court memorialized its ruling via judgment entries filed April 21, 2008. Appellants appeared before the trial court on May 7, 2008, and withdrew their former pleas of not guilty and entered pleas of no contest. The trial court accepted the pleas, found appellants guilty, and sentenced them accordingly.

{¶ 9} Appellant Waters appeals, raising the following assignments of error:

{¶ 10} "I. The trial court erred in finding appellant guilty of disorderly conduct by intoxication when his conduct did not create a risk of physical harm to himself.

{¶ 11} "II. The trial court erred by not suppressing the evidence gathered as a result of the arrest of the appellant, which lacked probable cause and violated appellant's Fourth Amendment right against unreasonable searches and seizures."

{¶ 12} Appellant McLaughlin appeals, raising the following assignments of error:

{¶ 13} "I. The Ashland Municipal Court erred by not suppressing the evidence gathered as a result of the arrest of the defendant, which arrest was without probable cause and therefore in violation of his Fourth Amendment right against unreasonable searches and seizures.

{¶ 14} "II. The Ashland Municipal Court erred by not dismissing the charge of disorderly conduct against defendant because the arrest was without probable cause.

{¶ 15} "III. The Ashland Municipal Court erred by not suppressing the statements made after the arrest of the defendant, which statements were given prior to Miranda warnings, and said arrest being without probable cause and therefore in violation of his Fourth Amendment and Fifth Amendment rights."

{¶ 16} Appellant Gatewood appeals, raising the following assignments of error:

{¶ 17} "I. The Ashland Municipal Court erred by not suppressing the evidence gathered as a result of the arrest of the defendant, which arrest was without probable cause and therefore in violation of his Fourth Amendment right against unreasonable searches and seizures.

{¶ 18} "II. The Ashland Municipal Court erred by not dismissing the charge of disorderly conduct against defendant because the arrest was without probable cause."

Waters Appeal II

McLaughlin Appeal I

Gatewood Appeal I

{¶ 19} Waters, McLaughlin, and Gatewood maintain that the trial court erred in failing to suppress evidence obtained as a result of their arrests, as Officer Evans lacked probable cause to make such arrest.

{¶ 20} An appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321. As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. An appellate court must then independently determine without deference to the trial court's

legal conclusions whether, as a matter of law, evidence should be suppressed. *State v. Russell* (1998), 127 Ohio App.3d 414, 416, 713 N.E.2d 56; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

{¶ 21} The searches incident to appellants' arrests for disorderly conduct resulted in the discovery of illegal drugs and drug paraphernalia. This evidence was the foundation for their respective arrests for drug possession.

{¶ 22} The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The state bears the burden of establishing that a warrantless search, which is per se unreasonable, is nevertheless reasonable pursuant to one or more exceptions to the Fourth Amendment's warrant requirement. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus. A search incident to arrest is an exception to the general rule that warrantless searches are per se unreasonable. *State v. Mims,* 6th Dist. No. OT–05–030, 2006-Ohio-862, 2006 WL 456766, ¶ 23. However, police may conduct a search of the arrestee's person incident only to a *lawful* arrest. *State v. Dillon,* 10th Dist. No. 04AP–1211, 2005-Ohio-4124, 2005 WL 1910749, 2005 WL 1910749, ¶ 31. Evidence obtained as a result of an illegal arrest is inadmissible at trial. *State v. Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104, citing *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 23} Here, the determinative issue is whether Officer Evans had probable cause to arrest appellants for disorderly conduct due to intoxication. If the officer lacked probable cause, the evidence seized during the searches incident to the arrests must be suppressed. Probable cause to conduct a warrantless arrest exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information to warrant a belief by a prudent person that an offense has been committed by the person to be arrested. *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.

{¶ 24} R.C. 2917.11 provides:

{¶ 25} "(B) No person, while voluntarily intoxicated, shall do either of the following:

{¶ 26} " * * *

{¶ 27} "(2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another."

{¶ 28} Appellants do not challenge the trial court's findings that they were voluntarily intoxicated. Rather, appellants assert that they did not create a risk

of physical harm to themselves or another by their actions while on private property.

{¶ 29} The 1974 Committee Comment to Am.Sub.H.B. No. 511 states: "It is a violation if [the offender] imbibes too much and, while in public or with others, becomes offensively noisy, coarse, or aggressive, or becomes uncontrollably nauseated between the entree and dessert. It is also a violation if, when alone and drunk or under the influence of drugs, he attempts a tightrope act on a bridge parapet or curls up to sleep in a doorway in freezing weather."

{¶ 30} The law focuses, not on the drunken state of the accused, but rather upon his conduct while drunk. *State v. Pennington* (Nov. 16, 1998), 5th Dist. No. 1998CA00137, 1998 WL 818632. The law requires some affirmative behavior on the part of the defendant and does not prohibit merely being intoxicated. *State v. Jenkins* (Mar. 31, 1998), 6th Dist. No. L–97–1303, 1998 WL 161190; *State v. Parks* (1990), 56 Ohio App.3d 8, 10–11, 564 N.E.2d 747. In *Pennington*, this court concluded that although Pennington had been voluntarily intoxicated, he did not put himself at risk of harm. We held that running through a bad neighborhood at 2:30 a.m. was insufficient to sustain a conviction under R.C. 2917.11(B)(2).

{¶ 31} In the present matter, appellants argue that they were simply in a garage, drinking, and that Waters became ill from consuming too much alcohol, although Officer Evans determined that Waters did not require medical attention. The state submits that the arrests were proper based upon Officer Evans's testimony, in his opinion, that appellants "were too intoxicated to care for themselves," and he did not think "leaving them in that situation in that garage was going to be a safe situation for all four of them."

{¶ 32} "Risk" is statutorily defined as "a significant possibility as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(7). We find insufficient evidence that appellants were at risk of harm to rise to the level of probable cause to arrest. Officer Evans's opinion that appellants' remaining in the garage would not be a safe situation coupled with the other facts presented is insufficient to constitute a risk of harm within the meaning of R.C. 2917.11(B)(2). The committee comment states that an intoxicated person will be in violation if he "curls up to sleep in a doorway in freezing weather" or attempts "a tightrope act on a bridge." Appellants, while obviously intoxicated, with one (Walters) intoxicated to the point of vomiting, were not intoxicated to the point of unconsciousness, nor did the police officers seek any medical attention for appellants. Although we recognize that there always exits some risk of harm when people are intoxicated, we do not find a "significant possibility" of harm extant in this case. Any harm to appellants was merely a remote possibility and not within the meaning of R.C. 2917.11(B)(2). For a similar result, see *McCurdy v. Montgomery Cty.* (C.A.6, 2001), 240 F.3d

512, in which the court held: "The statute therefore requires both that an individual is 'voluntarily intoxicated' *and* that the individual 'present[ ] a risk of physical harm' either to himself, another, or another's property. * * * This second element requires some affirmative showing of dangerousness, as the sole fact that an individual is intoxicated does not give rise to a § 2917.11(B)(2) infraction. See *State v. Pennington*, No. 1998CA00137, 1998 WL 818632, at *1– *2 (Ohio App. Nov. 16, 1998) (not reported in N.E.2d) (citing § 2917.11(B)(2)'s legislative history, asserting that the provision 'is aimed at particular conduct, rather than at the condition [of intoxication]'); *State v. Jenkins*, No. L–97–1303, 1998 WL 161190, at *7 (Ohio App. Mar. 31, 1998) (not reported in N.E.2d) (holding that § 2917.11(B)(2) requires 'some affirmative conduct on the part of the defendant and [does not] prohibit merely being intoxicated in public')." (Emphasis sic.)

{¶ 33} Consequently, the police lacked probable cause to arrest appellants. The seizure of evidence incident to appellants' unlawful arrests was in violation of their Fourth Amendment right against unreasonable searches and seizures, and the trial court should have suppressed the evidence.

{¶ 34} Based upon the foregoing, we sustain Waters's second assignment of error, McLaughlin's first assignment of error, and Gatewood's first assignment of error.

Waters Appeal I

Gatewood Appeal II

McLaughlin Appeal II

{¶ 35} In his first assignment of error, Waters asserts that the trial court erred in finding him guilty of disorderly conduct by intoxication, as his conduct did not create a risk of physical harm to himself. In Gatewood's and McLaughlin's second assignments of error, each maintains that the trial court erred in failing to dismiss the charges of disorderly conduct against him, as his arrest was without probable cause.[1]

{¶ 36} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that

---

1. Although a lack of probable cause to arrest does not require the granting of a motion to dismiss we shall treat Gatewood's and McLaughlin's second assignments of error as manifest-weight-of-the-evidence claims.

the conviction must be reversed. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court will not reverse a conviction when there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Johnson* (1991), 58 Ohio St.3d 40, 41, 567 N.E.2d 266; *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

{¶ 37} Appellants assert that the state produced inadequate evidence to prove beyond a reasonable doubt that they were creating a risk of harm to themselves or others. We agree. As discussed, Officer Evans's opinion testimony that appellants were too intoxicated to care for themselves and that leaving them in the garage would be unsafe does not establish the element of risk as required to prove a conviction for disorderly conduct under R.C. 2917.11(B)(2). Because the state failed to prove an essential element of the offense, we hold that appellants' convictions were against the manifest weight of the evidence. Waters's first assignment of error Gatewood's second assignment of error, and McLaughlin's second assignment of error are sustained.

### McLaughlin Appeal III

{¶ 38} In light of our disposition of McLaughlin's first and second assignments of error, we find his third assignment of error to be moot.

{¶ 39} The judgment of the Ashland Municipal Court is reversed.

*Judgment reversed.*

DELANEY, J., concurs.

FARMER, P.J., concurs in part and dissents in part.

FARMER, Presiding Judge, concurring in part and dissenting in part.

{¶ 40} I respectfully dissent from the majority's position that Officer Evans did not have probable cause to arrest Waters.

{¶ 41} Under the probable-cause standard analyzed in *Brinegar v. United States* (1949), 338 U.S. 160, 172–176, 69 S.Ct. 1302, 93 L.Ed. 1879, I would find the facts and beliefs stated by Officer Evans to qualify as a reasonable, prudent opinion of a law-enforcement person:

{¶ 42} "That emphasis, we think, goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search. It approaches requiring (if it does not in practical effect require) proof sufficient to establish guilt in order to substantiate the existence of probable cause. There is a large difference between the two things to be proved, as well as between the tribunals

which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.

{¶ 43} "For a variety of reasons relating not only to probative value and trustworthiness, but also to possible prejudicial effect upon a trial jury and the absence of opportunity for cross-examination, the generally accepted rules of evidence throw many exclusionary protections about one who is charged with and standing trial for crime. Much evidence of real and substantial probative value goes out on considerations irrelevant to its probative weight but relevant to possible misunderstanding or misuse by the jury.

{¶ 44} " * * *

{¶ 45} "The court's rulings, one admitting, the other excluding the identical testimony, were neither inconsistent nor improper. They illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

{¶ 46} "However, if those standards were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end. * * * Those standards have seldom been so applied. * * *

{¶ 47} "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

{¶ 48} " 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' * * * And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C.J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate,* * * it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the

belief that' an offense has been or is being committed." (Citations and footnotes omitted.)

{¶ 49} Officer Evans was lawfully on the premises. Once having viewed and determined the state of Waters's intoxication, Officer Evans was faced with a "Hobson's choice." As the majority argues, Officer Evans should have walked away. However, in his view of the facts, there was a substantial risk of harm to Waters. Waters was not merely sleeping in a doorway; he was physically ill, with no obviously available help from the others in the garage.

{¶ 50} The majority's reliance on the technical meaning of the statute is appropriate in determining guilt or nonguilt; it is not appropriate in determining probable cause. Police officers are not legal technicians or law professors or judges. What Officer Evans did was to respond to the facts as he saw them and respond to the risk he reasonably believed would occur.

{¶ 51} I would hold that the trial court did not err in denying Waters's motion to suppress. As to the other assignments of error involving Gatewood, I concur with the majority.