[Cite as *State v. Hollis*, 2013-Ohio-2586.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 12CA34 |
| MATTHEW HOLLIS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of
                              Common Pleas, Case No. 2011CR0181 D


JUDGMENT:                     AFFIRMED


DATE OF JUDGMENT ENTRY:       June 17, 2013


APPEARANCES:

For Appellant:                          For Appellee:

ROBERT E. CALESARIC                     JAMES J. MAYER, JR.
35 South Park Place, Suite 150          RICHLAND CO. PROSECUTOR
Newark, OH 43055                        JOHN C. NIEFT
                                        38 South Park St.
                                        Mansfield, OH 44902

*Delaney, P.J.*

{¶1} Appellant Matthew Hollis appeals from the January 3, 2012 decision of the Richland County Court of Common Pleas overruling his motion to suppress. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are adduced from the indictment, bill of particulars and evidence presented by both parties at the hearings on appellant's motion to suppress.

{¶3} This case arose on September 12, 2010, a few minutes after midnight, when troopers of the Mansfield post of the Ohio State Highway Patrol were dispatched to a fatal traffic crash at the intersection of Reed Road and Route 30. Upon arrival, troopers discovered an overturned white Ford Ranger pickup truck in the median and a number of witnesses at the scene.

{¶4} Upon investigation, troopers discovered appellant had driven the pickup truck from Reed Road onto Route 30 at a high rate of speed, failed to negotiate a curve, lost control, left the roadway, overcorrected, and overturned the vehicle.

{¶5} In addition to appellant, the truck contained three passengers: Michelle Antonelli was in the right-front passenger seat, and Matthew Oprean and Allen Shirer were in the bed of the truck. Oprean and Shirer were ejected during the crash and landed in the roadway, exposed to oncoming traffic. Oprean was either killed during the crash, ejection, and impact, or was struck and killed by oncoming traffic; he was pronounced dead at the scene. Shirer and Antonelli sustained serious injuries.

{¶6} Troopers on the scene of the crash observed alcoholic beverage containers in and around the vehicle and the roadway, and detected an odor of an alcoholic beverage permeating the entire scene. The victims had already been transported by EMS, although appellant was briefly still present and spoke with a trooper who described him as "emotionally shooken up (*sic*)." Appellant was soon transported to MedCentral Hospital in Mansfield for treatment.

{¶7} Trooper Aaron Doerfler made contact with appellant in the MedCentral emergency room. Appellant was laying on a hospital bed covered with a blanket, and the trooper did not note any apparent visible injuries. He noticed the odor of alcohol about appellant's person and intended to read him the BMV 2255 form. Doerfler was unable to read the form, however, because appellant would not respond to his questions. Doerfler described appellant crying and wailing, conscious but unresponsive to Doerfler's questions and statements. Doerfler said he spent several minutes attempting to communicate with appellant, who said nothing or cried and "toss[ed] his head back and forth." Doerfler filled out the BMV 2255 but noted appellant was unable to sign because he was unresponsive.

{¶8} Doerfler testified that if appellant had been responsive, he would have read the 2255 form to him and asked him to submit to a blood test. Doerfler determined appellant was unresponsive and therefore asked a nurse to draw appellant's blood, providing her with a kit he kept in his patrol car for the purpose of chemical testing. The kit contained two vials for appellant's blood. The nurse drew the blood at 0154 hours and gave the vials to Doerfler, who sealed them with evidence tape. Both Doerfler and the nurse signed labels on the vials, Doerfler returned them to

the kit, sealed it, and placed the kit in a mailbox outside the hospital at 0212 hours, addressed to the Ohio State Highway Patrol Crime Lab.

{¶9} Investigating troopers testified the decision was made to request the blood draw based upon "informed consent" and did not seek a search warrant for appellant's blood. Blood was also drawn for medical alcohol testing purposes by MedCentral personnel.

{¶10} Subsequent testing of appellant's blood samples by the Ohio State Highway Patrol Crime Lab and MedCentral Hospital Laboratory found a whole blood alcohol concentration of .197 grams by weight of alcohol per one hundred milliliters (grams percent) and a blood serum concentration of .239 grams by weight of alcohol per one hundred milliliters.

*Indictment, Motion to Suppress, and Plea*

{¶11} Appellant was charged by indictment with one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a), a felony of the second degree; one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(2), a felony of the third degree; two counts of aggravated vehicular assault pursuant to R.C. 2903.08(A)(1)(a), felonies of the third degree; two counts of aggravated vehicular assault pursuant to R.C. 2903.08(A)(2)(b), felonies of the fourth degree; one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(f), a misdemeanor of the first degree; one count of O.V.I pursuant to R.C. 4511.19(A)(1)(c), a misdemeanor of the first degree; and one count of O.V.I pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

{¶12} Appellant entered pleas of not guilty and filed a motion to suppress all evidence obtained from his arrest, including the chemical tests of his blood. A series

of evidentiary hearings were held. Appellee conceded the hospital medical blood draw was not legally sufficient to support an indictment under R.C. 4511.19(A)(1)(c) [plasma], but indicated its intent to use the test with expert testimony to establish a violation of R.C. 4511.19(A)(1)(a).

{¶13} The trial court overruled appellant's motion to suppress on January 3, 2012. Thereafter, appellant entered pleas of no contest as charged and on April 16, 2012, was sentenced to an aggregate prison term of 6 years, in addition to a mandatory term of 3 years post-release control, a lifetime drivers-license suspension, and restitution.

{¶14} Appellant now appeals from the trial court's decision overruling his motion to suppress.

{¶15} Appellant raises three Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTION TO SUPPRESS THE LEGAL WHOLE BLOOD DRAW EVIDENCE OBTAINED BY LAW ENFORCEMENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES AND RC 4511.19 AND RC 4511.191(*sic*)."

{¶17} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTION TO SUPPRESS THE MEDICAL PLASMA BLOOD DRAW EVIDENCE OBTAINED BY LAW ENFORCEMENT IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES AND RC 4511.19 AND RC 4511.191 (*sic*)."

{¶18} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY ALLOWING THE STATE TO PUT ON EXPERT TESTIMONY WITHOUT COMPLYING WITH CRIMINAL RULE 16 DENYING APPELLANT DUE PROCESS OF LAW."

I., II.

{¶19} Appellant's first two assignments of error arise from the trial court's rulings upon the motion to suppress and will be addressed together.

*Standard of Review*

Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine

whether the trial court's findings of fact are against the manifest weight of the evidence.  See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991).  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law.  See*, Williams*, supra.  Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.  *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

*Probable Cause and Arrest*

{¶21} First, appellant contends troopers had no probable cause to arrest him and that he was not the subject of a valid arrest which would trigger the provisions of implied consent.  We disagree.

{¶22} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, the Fourth Amendment protects persons against unjustified or improper intrusions into a person's privacy, including bodily intrusion. See *State v. Gross*, 5th Dist. No. CT 96-055 (May 24, 1999), citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

{¶23} It is well-established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The United States Supreme Court has recognized that the Fourth Amendment's "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662(1985), quoting *Schmerber*, supra, at 768. However, "a suspect, upon request of a police officer, may voluntarily consent to submit to a blood test to determine the concentration of alcohol in his or her blood. Such consent constitutes actual consent * * *." *Fairfield v. Regner*, 23 Ohio App.3d 79, 85, 491 N.E.2d 333 (12th Dist.1985).

{¶24} Ohio's statutory implied consent law is found in R.C. 4511.191(A)(2), which states in pertinent part:

> Any person who operates a vehicle * * * upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle * * * shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine *if arrested for a violation of division (A) or (B) of*

*section 4511.19 of the Revised Code*, section 4511.194 of the

Revised Code or a substantially equivalent municipal ordinance,

or a municipal OVI ordinance. (Emphasis added).

{¶25} Appellant argues here that the "implied consent to testing" provisions of R.C. 4511.191 are not applicable because he was not arrested. In *State v. Whitt*, we reiterated the principle that an arrest occurs when four elements are present: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. 5th Dist. No. 10-CA-3, 2010-Ohio-3761at ¶ 14, citing *State v. Darrah*, 64 Ohio St.2d 22, 412 N.E.2d 1328 (1980).[1] We also referenced our decision in *State v. Kirschner*, 5th Dist. No.2001 CA00107, 2001-Ohio-1915, for the proposition that " 'a valid arrest must precede the seizure of a bodily substance, including a blood draw, and must precede an implied consent given based upon Form 2255.'" Id. at ¶ 18, quoting *State v. Rice*, 129 Ohio App.3d 91, 98, 717 N.E.2d 351 (1998).

{¶26} We have also recognized, however, the reality of constructive arrest, particularly in cases such as the one sub judice in which the subject of the drunken driving investigation is hospitalized or undergoing treatment and arrest per se is not feasible. That doesn't mean the investigation stops. In the instant case, the trial court applied the rationale of our decision in *State v. Groves*, which we also find to be applicable. 5th Dist. No. 10CA18, 2010-Ohio-5089. In that case, the driver was hospitalized when he was questioned by the officer and read the BMV 2255; the driver

---

[1] Judge Hoffman concurred separately in *Whitt*.

was never taken into "custody" as such because he was undergoing medical treatment and there was no time for a citation to be issued. Nevertheless, we found as follows:

> Despite this court's holding in *State v. Kirschner*, [5th Dist.] No.2001CA00107, 2001-Ohio-1915, the administrative regulations in the case sub judice were fulfilled. Appellant was told he was under arrest. A citation would have been issued at the hospital but for appellant's medical emergency. To disallow the results of the blood draw because of the intervening urgent circumstances would place form over substance. The purpose of the mandatory language of the implied consent law is to inform the suspect of his various rights under 4511.191 and the administrative license provisions for non-consent. The language contained in the BMV 2250 form was sufficient to establish an "arrest."

> *State v. Groves,* 5th Dist. No. 10CA18, 2010-Ohio-5089, ¶ 19.

{¶27} We find the trooper's interaction with appellant at the hospital in obtaining the blood sample after his constructive arrest complied with R.C. 4511.191(A)(2) and is reasonable under the Fourth Amendment. See, *State v. May*, 5th Dist. No. 2010CA1, 2010-Ohio-4594, ¶ 22, appeal not allowed, 127 Ohio St.3d 1547, 2011-Ohio-647, 941 N.E.2d 803.

{¶28} Appellant further argues, though, that no probable cause existed to arrest him for O.V.I., and we disagree. A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense.

*State v. Cummings,* 5th Dist.No.2005–CA–00295, 2006–Ohio–2431, ¶ 15, citing *State v. Heston*, 29 Ohio St.2d 152, 280 N.E.2d 376 (1972). In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (1997); *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (2nd Dist.1987). When evaluating probable cause to arrest for OVI, the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. See *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000). Furthermore, a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See *State v. Harrop*, 5th Dist. No. CT2000–0026 (July 2, 2001), citing *Atwell v. State*, 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist.1973).

{¶29} The tragic facts and circumstances of the instant case are replete with probable cause for appellant's constructive arrest for O.V.I.  The circumstances of the crash, which include appellant losing control and overturning the vehicle at a high rate of speed, combined with the alcoholic beverage containers scattered throughout the scene, plus the odor of an alcoholic beverage emanating from appellant's person in the MedCentral E.R., constitute probable cause.  We also note appellant's demeanor of moaning, wailing, and failing to respond to the trooper despite his responsiveness to hospital personnel.

*Exigent Circumstances*

{¶30} Appellant next argues appellee did not prove exigent circumstances existed which would permit his blood to be drawn absent a search warrant. We note that if there are exigent circumstances and "an officer has probable cause to arrest a driver for DUI, the result of an analysis of a blood sample taken over the driver's objection and without consent is admissible in evidence, even if no warrant had been obtained." *State v. Hoover*, 123 Ohio St.3d 418, 2009–Ohio–4993, 916 N.E.2d 1056, ¶ 19, citing *Schmerber v. California*, 384 U.S. 757, 770–771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The issues are whether exigent circumstances existed along with probable cause to arrest appellant for OVI prior to the evidentiary blood draw, and whether a reasonable procedure was used to extract the blood. *Schmerber* at 770–772; *State v. Capehart*, 12th Dist. No. CA2010–12–035, 2011–Ohio–2602, ¶ 10. If all of these elements are present, then appellant's consent was unnecessary for the blood draw results to be admissible. *State v. Carr*, 11th Dist. No. 2012-L-001, 2013-Ohio-737, ¶ 43.

{¶31} We have already determined probable cause existed to arrest appellant for O.V.I. Turning to the question of exigent circumstances, we have recognized that the potential for alcohol to dissipate within a suspect's blood system constitutes exigent circumstances. *State v. Anderson*, 5th Dist. No. 00CAA12039, 2001 WL 967900, *2, appeal not allowed, 94 Ohio St.3d 1410, 759 N.E.2d 787. Other courts have held likewise. "It is beyond cavil that alcohol in an individual's system progressively dissipates over a short period of time." *Willoughby v. Dunham*, 11th Dist. No. 2010-L-068, 2011-Ohio-2586, ¶ 37; *Schmerber* at 770 ("the percentage of

alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system"). Exigent circumstances have also been found to justify ordering a blood sample without consent under *Schmerber* when a defendant was in an accident approximately two hours prior to the blood draw and "there was a risk that evidence would be destroyed as appellant's system began to eliminate the alcohol." *State v. Schulte*, 11th Dist. No. 94-L-186, 1996 WL 660880, *8, appeal not allowed, 78 Ohio St.3d 1428, 676 N.E.2d 533 (1997); *Schmerber* at 770–771 (in cases where the defendant had to be taken to a hospital and police had to investigate the scene of the accident, time is limited to secure a warrant and exigent circumstances exist).

{¶32} In the instant case, troopers had probable cause to suspect appellant was under the influence of alcohol after encountering him at the scene of the accident. Appellee presented evidence through Morrow's testimony that a search warrant would have taken "hours" to obtain. We find exigent circumstances existed.

{¶33} Finally, the *Schmerber* court also required that, provided exigent circumstances and probable cause exist, the blood must also be drawn in a reasonable manner. Here, the blood was drawn by a nurse who used gloves, used the non-alcoholic iodine swab in the trooper's kit to clean the area, used a sterile needle from stock, and collected the sample into a grey-topped vacuum tube in the kit containing preservative and anticoagulant materials. No evidence exists this was not done using the typical, reasonable procedures used for extracting blood and, therefore, this element of *Schmerber* was met. See *State v. Capehart*, 12th Dist. No. CA2010-12-035, 2011–Ohio–2602, at ¶ 13 ("because the blood sample was drawn by

trained medical personnel using medically acceptable procedures, it is clear that the method used to extract the evidence was reasonable and performed in a reasonable manner").

*Timely Blood Draw*

{¶34} Appellant next argues appellee failed to show the blood draw was requested within two hours and drawn within three hours of operation, and did not establish substantial compliance with Chapter 3701-53-05 of the Ohio Administrative Code in terms of the method of collection and retention of the sample. These issues present mixed questions of law and fact. During a suppression hearing, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2nd Dist.1996). As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993). An appellate court must then independently determine without deference to the trial court's legal conclusions whether, as a matter of law, evidence should be suppressed. *State v. Waters*, 181 Ohio App.3d 424, 430, 909 N.E.2d 183 (5th Dist.2009).

{¶35} Appellant insists throughout his argument that the time of the crash was merely speculative, but this assertion is not borne out by the record. The trial court found the crash occurred at midnight, and this finding is supported by competent credible evidence. Trooper Beringo testified the time of dispatch was 12:04 and it is reasonable to conclude from the circumstantial evidence that the crash had occurred

shortly before it was called in. Appellant was still on the scene and admitted to Trooper Morrow, who arrived at 12:10, that he was the driver. Tragically, witnesses were still a short distance away at a rest stop on the highway who thought they had struck one of the victims as he lay in the roadway.

{¶36} The trial court's conclusion that the blood was drawn within two hours of the crash is supported by competent, credible evidence. Appellant was immediately transported to MedCentral by the EMS squad, where Trooper Doerfler later made contact with him. Doerfler testified that he read the BMV 2255 form at 0120 hours, the blood was drawn at 0154 hours, and he placed the sealed kit containing the samples into the mailbox near the hospital at 0212 hours.

{¶37} Appellant also argues appellee did not establish that a solid anticoagulant was used because two witnesses testified the tubes appeared to be empty. Appellant's assertion is belied by the fact that the lab was able to obtain a sample from the tubes, in other words, the blood samples were still in liquid form upon testing. As appellee points out, if the anticoagulant was missing, the samples would have been solid and unable to be tested.

*Blood Plasma Issues*

{¶38} Appellant further argues the trial court should have suppressed the blood plasma evidence because the testing procedure was "tainted" and does not comply with the Rules of Evidence. We note, however, that the trial court found the hospital blood alcohol test "may only be used in evidence to prove alcohol impaired driving if it is offered with expert testimony." While we have already concluded that the testing was performed within three hours of operation, supra, appellant is charged with a

violation of R.C. 4511.19(A)(1)(a) and evidence of a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) in the prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered. *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, syllabus.

{¶39} The evidence in this case established a MedCentral phlebotomist made a separate blood draw pursuant to medical orders. Appellant's arm was cleaned with water and gauze, and blood was drawn into a tube labeled and bar-coded specifically for appellant, labeled with the technician's initials and time of draw. The blood tube was placed in a "bio-bag" and sent directly to the hospital lab through the hospital's pneumatic tube system. Upon receipt in the lab, another technician centrifuged the sample to separate the blood plasma and tested the sample on the Siemens Advia 1800 instrument by means of the alcohol dehydrogenase enzymatic method at 1:47 a.m.

{¶40} We find the trial court's findings of fact to be supported by competent, credible evidence. The trial court did not err in overruling appellant's motion to suppress.

{¶41} Appellant's first and second assignments of error are overruled.

III.

{¶42} In his third assignment of error, appellant summarily argues the trial court should not have permitted appellee to present the testimony of two "experts"

without providing those experts' reports and qualifications prior to their testimony. We disagree.

{¶43} We note the "experts" appellant complains of, employees of the MedCentral lab, did not testify as experts within the meaning of Crim.R. 16(K). Instead, they were merely fact witnesses who testified to their procedures and the testing performed on appellant's sample in response to arguments raised in what appellee characterizes as a "shotgun motion to suppress." Moreover, these witnesses testified at a suppression hearing and not at trial.

{¶44} The trial court did not err in permitting the witnesses to testify and appellant's third assignment of error is without merit.

{¶45} Having overruled appellant's three assignments of error, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

PAD:kgb

[Cite as *State v. Hollis*, 2013-Ohio-2586.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MATTHEW HOLLIS | : | |
| | : | |
| | : | Case No. 12CA34 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE