[Cite as *State v. Lawrence*, 2015-Ohio-3906.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| TERESA L. LAWRENCE | : | Case No. 15 CAA 01 0010 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Court of Common
                                    Pleas, Case No. 14 CR I 02 0066



JUDGMENT:                           Reversed and Remanded



DATE OF JUDGMENT:                   September 23, 2015




APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

ANDREW M. BIGLER                        TODD A. WORKMAN
140 North Sandusky Street               P.O. Box 687
3rd Floor                               Delaware, OH  43015
Delaware, OH  43015

*Farmer, J.*

{¶1}   On September 22, 2013, Ohio State Highway Patrol Trooper Ashley Elliott was dispatched to a car accident.   Upon arrival, Trooper Ashley found a two-vehicle crash and learned that one of the drivers, appellee, Teresa Lawrence, was being transported to an emergency care center.   While speaking with appellee at the care center, Trooper Elliott detected a strong odor of alcohol on her person, and observed glassy, bloodshot eyes.   Appellee also admitted to drinking prior to the crash.   Trooper Elliott conducted a field sobriety test, read appellee her Miranda rights, and asked appellee to submit to a blood test.   Appellee signed the consent form.

{¶2}   On February 21, 2014, the Delaware County Grand Jury indicted appellee on one count of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), and two counts of driving a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (f).

{¶3}   On May 16, 2014, appellee filed a motion to suppress, claiming, among other things, an involuntary consent because she had never been placed under arrest. Hearings were held on September 26, and October 27, 2014.   By judgment entry filed January 23, 2015, the trial court granted the motion and suppressed the results of the blood draw, finding no evidence of a lawful arrest.

{¶4}   Appellant, the state of Ohio, filed an appeal and this matter is now before this court for consideration.   Assignment of error is as follows:

I

{¶5}   "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION TO SUPPRESS."

I

{¶6}   Appellant claims the trial court erred in granting appellee's motion to suppress.  We agree.

{¶7}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact.  In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence.  *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993).  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993).  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.  *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger*.

{¶8}   Appellant argues the trial court "applied the incorrect law or, in the alternative, incorrectly applied the facts to the appropriate law."  Appellant's Brief at 6.

{¶9}   R.C. 4511.191(A)(2) applies in this case and states the following:

Any person who operates a vehicle, streetcar, or trackless trolley upon a highway or any public or private property used by the public for vehicular travel or parking within this state or who is in physical control of a vehicle, streetcar, or trackless trolley shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol, drug of abuse, controlled substance, metabolite of a controlled substance, or combination content of the person's whole blood, blood serum or plasma, breath, or urine *if arrested* for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance.  (Emphasis added.)

{¶10} In its January 23, 2015 judgment entry denying the motion to suppress, the trial court found the following facts: Trooper Elliott arrived on the scene of the accident when EMS was already present; appellee was transported to an emergency care center; while speaking with appellee at the care center, Trooper Elliott detected a strong odor of alcohol on her person and observed glassy, bloodshot eyes; appellee admitted to consuming alcohol prior to the accident; Trooper Elliott administered the HGN test and found six clues of impairment; Trooper Elliott read appellee her Miranda rights and the BMV 2255 implied consent form.  T. at 76-78, 80-81.  The trial court then concluded the following:

The officer says she placed the Defendant under arrest. However, there are no facts in this record that the trooper did anymore than read the 2255 form to the Defendant and the Defendant signed the form.

The Trooper had followed the Defendant to Westerville Medical where the Defendant was in a typical hospital room sitting up on the bed. That is where the Trooper conducted the HGN test. The officer's report says the Defendant was not charged. The Trooper admits that the Defendant had no significant medical issues or injuries and was released shortly after the blood draw. The Defendant wasn't cited. The Trooper did nothing to seize the Defendant's body nor restrain her movement.

{¶11} The trial court determined appellant was not lawfully arrested, as there "was never an intent to arrest, no actual or constructive seizure of the Defendant and no evidence that the Defendant thought she was under arrest." In coming to this conclusion, the trial court cited this court's opinion in *State v. Kirschner,* 5th Dist. Stark No. 2001CA00107, 2001-Ohio-1915, *2, wherein this court stated: "Arrest occurs when four elements are present: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." The *Kirschner* opinion, quoting from *State v. Rice,* 129 Ohio App.3d 91, 98 (7th Dist.1998), joined our brethren from the Seventh District in holding "a valid arrest must precede the seizure of a bodily substance, including a blood draw, and must precede an implied consent given based upon Form 2255." Judge William B. Hoffman dissented, stating at *3, "In determining

when a person is arrested, a reviewing court should ask, in view of all the circumstances surrounding the incident, would a reasonable person believe he or she was not free to leave." Judge Hoffman continued:

The officer's subjective belief as to the status of appellant's custody does not control our decision. The fact Deputy Garrick did not intend to take actual physical custody of appellant after appellant had been transported to the hospital, does not negate the constructive seizure/arrest of appellant which occurred prior to his transport to the hospital. Likewise, the fact Deputy Garrick elected to issue a summons at the hospital rather than take actual physical custody of appellant does not negate his constructive seizure/arrest which occurred prior to his transport.

{¶12} In *State v. May,* 5th Dist. Morrow No. 2010 CA 1, 2010-Ohio-4594, ¶ 18-23, this court looked to whether there was an "intent to arrest" and a "constructive seizure" of the defendant:

The trial court in the case sub judice declined to suppress the blood draw on the basis that Trooper Holloway had the "intent to arrest" appellant and that there had been a "constructive seizure" of appellant. Judgment Entry at 4. The transcript of the suppression reveals that Holloway himself recalled that he had repeatedly told appellant at the

emergency room that he was "free to go."  Ultimately, however, Holloway recalled the following interaction with appellant:

"A. I asked him if he understood his Miranda rights again.  Did you understand those?  He advised he did.  I advised him that he was free to go.  I advised him he was under arrest, but he is not going to be under a custodial arrest.  I'm not going to physically place him under arrest at the hospital and handcuff him and take him out.  He's  - - I read him the BMV 2255.  He advised he understood the consequences of the test and refusal of it.  I asked him to submit to a blood test.

"Q. And did he agree to do so?

"A. Yes, ma'am, he did."  Tr. at 53.

In Ohio, the General Assembly has established the statutory prerequisite of an actual arrest for a warrantless blood draw in OVI cases. Although the trooper's complete colloquy with appellant at the hospital fell short of being unequivocal, we find the State's action in obtaining appellant's blood sample after the constructive arrest comported with R.C. 4511.191(A)(2) and was reasonable under the Fourth Amendment.  The trial court therefore correctly decided the ultimate issue raised in appellant's motion to suppress.

We hold the trial court did not err in denying the motion to suppress under the facts and circumstances of this case.

{¶13}  We find the *May* opinion to be consistent with Judge Hoffman's dissent in *Kirschner.*

{¶14}  In the case sub judice, Trooper Elliott testified she administered the HGN test to appellee and found six clues of impairment.  T. at 78, 80-81.  Trooper Elliott then read appellee her Miranda rights and the BMV 2255 implied consent form which specifically states on the first line, " 'You are now under arrest for***operating a vehicle under the influence***.' "  T. at 81, 93; State's Exhibit 4A.  Trooper Elliott stated she placed appellee under arrest.  T. at 81.  Appellee consented to the blood draw and signed the form.  T. at 81-82.  Trooper Elliott explained appellee was under arrest at the time, but "obviously she couldn't go with me because she was in the hospital."  T. at 89. Trooper Elliott stated aside from reading the form to appellee, she told her "there would be charges pending later on."  T. at 91.

{¶15}  The nurse present in appellant's room testified that the trooper spoke to appellee about her rights and the consent to draw blood.  T. at 20.  The nurse observed the trooper hand appellee a form and observed appellee sign it.  *Id.*

{¶16}  As for appellant's challenge to the facts found by the trial court, we find the record supports the trial court's findings.  However, in its judgment entry, the trial court did not consider or discuss the relative impact of the "you are under arrest" language included in the first line of the BMV 2255 form.  Instead, the trial court relied on the lack of evidence as to why appellee was not physically secured, cited, and placed in jail. Although the trial court relied on the absence of such evidence, the trial court disregarded the failure to discuss appellee's condition at the Westerville Emergency Care Center, other than to note that appellee "was in a typical hospital room sitting up

on the bed" and "the Trooper admits that the Defendant had no significant medical issues or injuries and was released shortly after the blood draw."  At the time of her interaction with appellee at the care center, Trooper Elliott could not have known the full extent of appellee's injuries or when she would be released, as she was in the process of receiving medical care.  Without evidence to support it, the trial court concluded appellee was available to be arrested.

{¶17}  Despite the lack of evidence, the trial court granted the motion to suppress by finding appellee was not lawfully arrested for purposes of R.C. 4511.191(A)(2), cited above.  Therefore, the gravamen of this case is whether the language of the BMV 2255 form, coupled with the facts of this case, is sufficient to fulfill the requirements of R.C. 4511.191(A)(2).  Given Trooper Elliott's testimony and the facts cited above, we find an "intent to arrest" and the "constructive seizure" of appellant.  Based upon our decision in *May, supra,* we find the language contained in the BMV 2255 form, coupled with the "intent to arrest" and "constructive seizure" of appellant, to be sufficient to meet the requirements of being "under arrest" for purposes of the implied consent statute.  *See also, State v. Hollis,* 5th Dist. Richland No. 12CA34, 2013-Ohio-2586.

{¶18}  Upon review, we find the trial court erred in granting the motion to suppress on the finding that appellee was not lawfully arrested.

{¶19}  The sole assignment of error is granted.

{¶20} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, J.

Hoffman, P.J. and

Delaney, J. concur.

SGF/sg 821